IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEIU 250 HEALTH CARE WORKERS UNION LOCAL 250, AFL-CIO,<br><br>    Petitioner,<br><br>    v<br><br>PRISONER HEALTH SERVICES, INC,<br><br>    Respondent.<br>_____/ | No   C-05-2718 VRW<br><br>ORDER |

        On June 6, 2005, SEIU 250 Health Care Workers Union Local 250, AFL-CIO ("SEIU") filed a petition to compel arbitration in Alameda County superior court against Prison Health Services, Inc ("PHS"). SEIU and PHS are parties to a collective bargaining agreement, and the dispute-at-issue arises from PHS's decision to discipline, and subsequently to terminate, Susan Battersby ("Battersby"), a PHS employee who was a union member. Petition (Doc #1, Ex 1). On July 1, 2005, PHS removed this action to federal court, asserting that the court has federal question jurisdiction over SEIU's petition because it arises under section

301(a) of the Labor Management Relations Act of 1947 ("LMRA").  Not of Rem (Doc #1) at 3.

Three motions are currently pending before the court.  On July 12, 2005, PHS moved to dismiss SEIU's petition under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.  Doc ##5,6.  On September 27, 2005, SEIU filed a motion to compel arbitration.  Doc ##12, 13.  In the same filing, SEIU also requested attorneys' fees under Cal Labor Code § 1128 and Cal Code Civ Pro § 128.5 on the ground that PHS's arguments are essentially frivolous.  Doc #13.

The court held a hearing on these motions on December 1, 2005.  For the reasons stated below, the court DENIES PHS's motion to dismiss, GRANTS SEIU's motion to compel arbitration and DENIES SEIU's motion for attorneys' fees.  After briefly describing the underlying facts of this case, the court examines the merits of these motions in turn.

I

The following facts are drawn from SEIU's petition to compel arbitration and its accompanying documents.  SEIU is a California labor organization that negotiated and executed a collective bargaining agreement ("CBA") on behalf of PHS's employees.  Petition at 1-2.  The CBA includes many provisions that pertain to the present dispute.  Article 9 of the CBA prohibits PHS from discriminating or harassing employees.  CBA (Petition, Ex A) at 12-13.  In particular, article 9.1 prohibits discriminating against an employee based on certain protected classifications, and article 9.2 prohibits discriminating because of an employee's union activity.  Id.  Article 15 specifies the procedures that PHS must

follow when conducting performance evaluations. Id at 30-31.

The key to the present dispute appears to reside in article 16, which governs the discipline and discharge of employees. Id at 31-33. In particular, article 16.1 provides:

> Non-probationary employees shall only be disciplined or discharged for just cause. To maintain their employment, each employee must retain his or her own security clearance from the Alameda County Sheriff's office. If the County Sheriff's Office directs the Employer to replace an employee for loss of security clearance or for any other reason, it will be deemed just cause for termination. The Employer will have no further obligations under this Agreement to the employee regardless of the reason for the loss of the security clearance or the reason given by the County Sheriff's Office. *Discipline or discharge of non-probationary employees shall be subject to the grievance and arbitration procedure.*

Id at 31-32 (emphasis supplied).

Article 17 provides for a grievance and arbitration procedure. Id at 33-35. Article 17.1 defines a grievance, which may be oral or in writing, "as any dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof." Id at 33. Moreover, article 17.1 also provides that "[g]rievances shall be processed promptly, and all parties thereto shall make a reasonable effort to adjust or settle such disputes by the following [three] steps," which are set forth in Articles 17.2-17.4. Id at 33-34. If the grievance is not satisfactorily resolved by the third step, article 17.5 permits the SEIU to refer the grievance to an arbitrator, who is empowered to make a final and binding decision. Id at 34-35.

//
//

3

**II**

It is well established that parties may agree to arbitrate disputes rather than having them heard in court. In 1925, Congress enacted the Federal Arbitration Act (FAA) to "reverse the longstanding judicial hostility to arbitration agreements," to "place [such] agreements on the same footing as other contracts" and to "manifest a liberal federal policy favoring arbitration agreements." EEOC v Waffle House, Inc, 534 US 279, 288-89 (2002) (internal quotation marks omitted). Thus, the FAA "embodies a clear federal policy in favor of arbitration," and "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Simula, Inc v Autoliv, Inc, 175 F3d 716, 719 (9th Cir 1999) (quoting Moses H Cone Mem'l Hospital v Mercury Constr Corp, 460 US 1, 24-25 (1983)). Moreover, "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v Warrior & Gulf Navigation Co, 363 US 574, 582-83 (1960).

The Supreme Court has held that an arbitrator should generally decide procedural and substantive issues pertaining to an arbitration agreement unless the issue involves a question of arbitrability, which the court defines as "[t]he question whether the parties have submitted a particular dispute to arbitration." Howsam v Dean Witter Reynolds, 537 US 79, 83 (2002). "The standard for demonstrating arbitrability is not high," Simula, 175 F3d at 719, and the district court retains no discretion to hear suits that are subject to arbitration. Id. When faced with requests

regarding arbitration, the court's sole duties are to determine whether an arbitration agreement exists and to enforce rigorously the terms of that agreement. Id at 720.

### III

On December 7, 2004, SEIU filed a grievance on behalf of Battersby for PHS's alleged violation of articles 9, 15 and 16 of the CBA. Petition, Ex B at 1. In particular, SEIU alleged that PHS discriminated against Battersby and harassed her because of her union activity as a chief shop steward and "based on protected classifications as set forth in Article 9.1 [of the CBA]." Id at 2-3. PHS subsequently fired Battersby, and SEIU alleges that it continued its grievance to include whether PHS had just cause to terminate her. Petition at 2.

Since about April 2005, SEIU alleges that it has been willing to refer this dispute to arbitration in accordance with article 17, but PHS has refused to do so. Id. SEIU also asserts that it has complied with the CBA at all relevant times. Id.

#### A

PHS provides two arguments why SEIU's petition to compel arbitration should be dismissed. First, PHS notes that article 16.1, which only applies to non-probationary employees, provides that "[t]he Employer will have no further obligations under this Agreement to the employee regardless of the reason for the loss of the security clearance or the reason given by the County Sheriff's Office." Doc #6 at 4-6; CBA at 31. PHS alleges that Battersby was terminated because she lost her security clearance, which was required for her employment with PHS at Santa Rica Jail in Dublin,

California.  Doc #5 at 2.  Accordingly, PHS argues that article 16.1 "could not be more explicit" in excluding the present dispute from the arbitration requirement.  Doc #6 at 5.

The court disagrees.  PHS tries to characterize the issues surrounding Battersby's termination as issues of arbitrability that the court should decide under <u>AT&T Technologies, Inc v Communications Workers of America</u>, 475 US 643, 649 (1986).  But PHS ignores that <u>AT&T</u> and other precedent require that courts strictly construe exclusionary provisions in arbitration agreements.  Id at 650; <u>Teamsters Local 315 v Union Oil Co</u>, 856 F2d 1307, 1309 (9th Cir 1988).  In this case, article 16.1 does not indicate that the parties intended to exclude the present dispute from arbitration.  Rather, the last sentence of this provision, italicized in the above quotation, mandates disputes like the present one to be arbitrated.

Moreover, at the hearing on this motion, PHS's counsel conceded that not every dispute related to an employee who failed to maintain a security clearance would involve termination.  Such disputes could involve benefits, vacation pay or a host of other matters.  Plainly, these disputes would not fall outside some exception to the grievance process created by the security clearance loss provision of article 16.1.  That being the case, and the CBA being otherwise silent on arbitrability of a dispute concerning termination due to loss of security clearance, it seems plain that the present dispute does not fall outside the grievance and arbitration process.

Barely more persuasively, PHS next argues that SEIU's petition should be dismissed because SEIU never filed a grievance

6

related to Battersby's termination —— in particular, PHS argues that the December 7, 2004, written grievance is irrelevant because it predates by three months Battersby's loss of security clearance and termination.  Doc #6 at 6.  PHS begins by asserting that the issue whether SEIU filed an arbitrable grievance is one for the court, not an arbitrator, to decide.  Id at 7.  PHS relies on <u>United Industrial Workers v Kroger Co</u>, 900 F2d 944 (6th Cir 1990), in which the Sixth Circuit held that "[p]rocedural questions of whether steps of a grievance procedure have been followed are generally left to the arbitrator[; s]ubstantive questions of whether an arbitrable grievance has been filed at all, however, are for the courts to decide."  Id at 947 (citation omitted); see also <u>Retail, Wholesale & Dep't Store Union, Local 390 v Kroger Co</u>, 927 F2d 275, 279 (6th Cir 1991) (same).

   The Ninth Circuit apparently has not yet dealt with this issue.  But even if the court were to adopt the <u>Kroger</u> approach, the court's review would be necessarily limited to whether, in some general sense, SEIU presented a grievance.  Courts lack the power to decide whether a party has precisely complied with grievance procedures set forth in an arbitration agreement.  <u>John Wiley & Sons, Inc v Livingston</u>, 376 US 543, 555-59 (1964).  Accordingly, an arbitrator, and not the court, must decide whether SEIU's purported grievance satisfies the specific procedural requirements set forth in article 17 of the CBA.

   In any event, SEIU has shown that it filed an arbitrable grievance.  For the purposes of the present 12(b)(6) motion, the court must accept as true SEIU's allegation in its petition that "there has been and continues to be a grievance as it applies to

7

1 whether or not the Employer had just cause to discharge Susan
2 Battersby * * *."  Petition at 2.
3        Moreover, because the procedure for filing grievances
4 under article 17 appears flexible, the court cannot conclude that
5 SEIU's allegation that it grieved Battersby's termination is
6 unreasonable, or that there are no set of facts that would entitle
7 SEIU to relief.  The court notes that because article 17.2 allows
8 for oral grievances, it does not appear necessary for SEIU to have
9 filed a formalistic written grievance to prevail on its claim when
10 it is clear the parties were already in an ongoing dispute
11 involving Battersby's employment.  An oral grievance could be
12 sufficient and there does not seem to be any basis for PHS to claim
13 that it did not understand the dispute that SEIU was pursuing on
14 behalf of Battersby.  Furthermore, the court notes that article
15 17.1 only requires that the parties "make a reasonable effort to
16 adjust or settle" disputes by the three-step process set forth in
17 articles 17.2-17.4.  Hence, even if SEIU never filed a grievance
18 encompassing Battersby's termination, SEIU might be able to show
19 that it made a "reasonable effort" to satisfy article 17's
20 requirements.  Accordingly, the court finds that PHS's claim that
21 SEIU never filed a grievance challenging Battersby's termination is
22 not a suitable ground to dismiss SEIU's petition.  The court
23 therefore DENIES PHS's motion to dismiss SEIU's petition.

24        B

25        Neither party in this case claims that the CBA or its
26 arbitration provisions are invalid.  Accordingly, the court's first
27 duty is to determine whether the present dispute is arbitrable —
28 that is, whether the dispute falls within the scope of the

arbitration agreement. <u>Howsam</u>, 537 US at 83. In arguing that the present dispute is not arbitrable, PHS only offers the already-discredited argument that article 16.1 excludes the present dispute from arbitration —— in fact, the CBA does not appear to have any provisions that prevent this dispute from being arbitrated. And this dispute is clearly arbitrable based on the broad language of articles 16.1 and 17.1, the SEIU's power under article 17.5 to request arbitration and the strong federal policy favoring arbitration. Accordingly, the court concludes that the present dispute is covered by the parties' arbitration agreement.

PHS also opposes the motion to compel arbitration by arguing that SEIU never filed an arbitrable grievance concerning Battersby's termination. Doc #15 at 3-5. For the reasons stated earlier, the court rejects this argument. Moreover, in an email sent on April 16, 2005, from SEIU representative Dana Simon ("Simon") to PHS vice-president Deborah Schutz, Simon indicates that the SEIU's December 7, 2004, grievance should be expanded to encompass Battersby's termination. Doc #17-2; Doc #16 at 2. These documents together comprise a new grievance that plainly relates to Battersby's termination. Accordingly, the court GRANTS SEIU's motion to compel arbitration.

C

Finally, SEIU seeks attorneys' fees under Cal Labor Code § 1128 and Cal Code Civ Pro § 128.5, alleging that PHS has not raised any substantial or credible issues to justify PHS's refusal to submit to arbitration. Doc #13 at 6-7. As a preliminary matter, SEIU improperly seeks attorneys' fees under a California statutory provision —— this case was removed on the basis of

1 federal question jurisdiction, because SEIU's petition arises under
2 section 301(a) of the LMRA. Not of Rem. Accordingly, federal law
3 applies to determine whether to award attorneys' fees.

4      The Ninth Circuit has held that "the award of fees is
5 appropriate when a party frivolously or in bad faith refuses to
6 submit a dispute to arbitration * * *." <u>United Food & Commercial
7 Workers Union v Alpha Beta Co</u>, 736 F2d 1371, 1383 (9th Cir 1984);
8 see also <u>Westinghouse Hanford Co v Hanford Atomic Metal Trades
9 Council</u>, 940 F2d 513, 523 (9th Cir 1991). Here, SEIU has not
10 provided any evidence that PHS acted in bad faith. Moreover,
11 although PHS made a frivolous argument when asserting that article
12 16.1 excludes the present dispute from arbitration, PHS's other
13 arguments were not completely without merit. Hence, the court
14 DENIES SEIU's motion for attorneys' fees.

15
16                         IV
17      In sum, the court DENIES PHS's motion to dismiss (Doc
18 #5), GRANTS SEIU's motion to compel arbitration (Doc #12) and
19 DENIES SEIU's motion for attorneys' fees (Doc #13). The clerk is
20 DIRECTED to close the file and TERMINATE all pending motions.

21
22      IT IS SO ORDERED.

23
24                                          _____
25                                          VAUGHN R WALKER
26                                          United States District Chief Judge
27
28